## In the United States District Court
## for the District of Kansas

———————

Case No. 21-cv-02373-TC

———————

MARY E. K.,[1]

*Plaintiff*

v.

KILOLO KIJAKAZI,
ACTING COMMISSIONER OF SOCIAL SECURITY,

*Defendant*

———————

## MEMORANDUM AND ORDER

Plaintiff Mary K. claims she is disabled and cannot work. *See* Doc. 11 at 1. She seeks review of a decision of the Commissioner of Social Security denying her Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–433. *Id.* at 1–2. For the following reasons, the Commissioner's final decision is reversed and remanded for further proceedings.

## I

## A

**1.** Federal district courts have jurisdiction, upon timely request, to review the Commissioner's final administrative decisions. 42 U.S.C. § 405(g). These cases require a careful review of the record to determine whether "substantial evidence supports the factual findings and whether the [administrative law judge] applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (citing *Lax*

---

[1] Plaintiff will be referred to only by first name followed by initials to protect her privacy. *See, e.g.*, *Joseph M. v. Kijakazi*, No. 22-1065, 2023 WL 2241526, at *5 (D. Kan. Feb. 27, 2023).

*v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). Evidence in support of a finding is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion," and therefore must be "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The ALJ's findings must be grounded in substantial evidence and demonstrate that the ALJ "consider[ed] all relevant medical evidence in making those findings." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citing *Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989)). Consequently, the court will "not reweigh the evidence or try the issues de novo," but it will "meticulously examine the record as a whole . . . to determine if the substantiality test has been met." *Id.* (citations omitted).

**2.** To evaluate an application for disability benefits, the Commissioner uses a five-step sequential analysis. 20 C.F.R. § 404.1520(a)(4); *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Wilson*, 602 F.3d at 1139 (quoting *Lax*, 489 F.3d at 1084). The claimant bears the burden of proof for the first four steps, but the Commissioner does for the fifth. *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005). In the first three steps, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the alleged onset of the disability, whether the claimant has any severe impairments, and whether the severity of any of those impairments meets or equals the severity of any impairment in the Listing of Impairments found in 20 C.F.R., Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(a)(4)(i)–(iii); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

The fourth and fifth steps of the analysis depend on the claimant's residual functional capacity (RFC), which the Commissioner assesses after completing the third analytical step. 20 C.F.R. § 404.1520(e). A claimant's RFC is the most the claimant can do despite limitations. *Id.* § 404.1545(a)(1). The Commissioner determines the claimant's RFC based on all relevant evidence in the record. SSR 16-3p, 2017 WL 5180304, at *4–5 (Oct. 25, 2017).

After analyzing the claimant's RFC, the Commissioner proceeds to the fourth and fifth steps of the analysis. At step four, the Commissioner determines whether the claimant can perform his or her past relevant work in light of his or her RFC. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled. *Id.* At step five, the Commissioner

bears the burden to show—in light of the claimant's RFC, age, education, and work experience—that work suitable for the claimant "exists in significant numbers in the national economy." *Id.* §§ 404.1520(a)(4)(v), 404.1560(c)(2).

### B

Plaintiff applied for disability insurance benefits in 2018. Doc. 11 at 1; Adm. Rec. 255.[2] The ALJ reviewed Plaintiff's disability claim according to the five-step analysis detailed in 20 C.F.R. § 404.1520. Adm. Rec. at 11. The ALJ found at step one that Plaintiff had not been employed in "substantial gainful activity" since June 22, 2018, the alleged onset date of Plaintiff's disability. Adm. Rec. 12.

At step two, the ALJ found Plaintiff's "disorder of the back" significantly limits her ability to perform basic work activities and further found that Plaintiff has mild mental impairments. Adm. Rec. 12. The ALJ determined that Plaintiff has "medically determinable mental impairments of anxiety, depression, borderline personality disorder, and PTSD" but that those impairments, "singly and in combination, do not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and are therefore non-severe." *Id.* at 13. Those non-severe impairments produced "a mild limitation in understanding, remembering, or applying information; a mild limitation in interacting with others; a mild limitation in concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing oneself." *Id.* at 14. The ALJ made this finding on the basis of the "broad functional areas of mental functioning" also known as "the 'paragraph B' criteria." *Id.* The ALJ recognized that the "paragraph B" criteria are separate from assessing RFC, the RFC analysis prior to steps four and five "requires a more detailed assessment," and the RFC "assessment reflects the degree of limitation . . . found in the 'paragraph B' mental function analysis." *Id.* At the third step, the ALJ determined that none of Plaintiffs' impairments alone or in combination "met or medically equaled the severity of one of the listed impairments" in the Listing of Impairments. *Id.* at 14.

---

[2] All references to the parties' briefs are to the page numbers assigned by CM/ECF except for factual references to the Administrative Record (Adm. Rec.).

The ALJ proceeded to assess Plaintiff's RFC according to the required two-step process. Adm. Rec. at 15. The ALJ first determined whether there was "an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the claimant's pain or other symptoms." *Id.* Next, the ALJ "evaluate[d] the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities." *Id.* This analysis only took into consideration Plaintiff's claimed disability "due to degenerative disc disease with spinal stenosis and nerve issues." *Id.* at 15–17. The ALJ did not consider or make findings pertaining to Plaintiff's mental RFC.

After determining Plaintiff's RFC, the ALJ analyzed Plaintiff's past relevant work at step four. Adm. Rec. at 17–18. The ALJ identified seven jobs[3] constituting substantial gainful activity that were performed long enough to achieve average performance. *Id.* at 18. A vocational expert testified that based on the ALJ's hypothetical of an individual with, among other things, Plaintiff's RFC, such an individual "could perform any of the claimant's past relevant work." *Id.* Comparing "the claimant's [RFC] with the physical and mental demands of her past relevant work" the ALJ determined that she was able to perform all of her past relevant jobs.

The ALJ thus determined that Plaintiff was not disabled, Adm. Rec. at 18, and denied her request for disability insurance benefits, *id.* at 7. After exhausting her administrative remedies before the Social Security Administration, Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C § 405(g). Doc. 1.

## II

Plaintiff argues that the ALJ failed to consider all of her medically determinable impairments when determining her RFC, tainting the ALJ's hypothetical and the vocational expert's resulting testimony regarding the performance of past relevant work. Doc. 11 at 19–21. The

---

[3] Plaintiff's past work was as a medical records clerk (DOT # 245.362-010, SVP 4), receptionist (DOT # 237.367-038, SVP 4), property manager (DOT # 186.167-018, SVP 5), parking supervisor (DOT # 915.133-010, SVP 4), data entry clerk (DOT # 203.582-054, SVP 4), assistant manager (DOT #185.167-046, SVP 7), and in customer relations (DOT # 919.663-010, SVP 3). Adm. Rec. at 18.

4

Commissioner argues that the ALJ did not need to consider Plaintiff's non-severe medically determinable mental impairments when assessing Plaintiff's RFC because those impairments were not supported by the record. Doc. 18 at 5–6. The ALJ's decision is reversed and remanded for further consideration because the ALJ acknowledged but failed to address Plaintiffs non-severe mental impairments when assessing her RFC.

A claimant's RFC is the most he or she can do despite limitations. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p, 1996 WL 374184, at *1. The RFC analysis requires consideration of all of a claimant's medically determinable physical and mental impairments, both severe and non-severe. 20 C.F.R. § 404.1545(a)(2), (b)–(c), (e); SSR 96-8p at *5. A claimant's "limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce [a claimant's] ability to do past work." 20 C.F.R. § 404.1545(c). That is so even if a mental impairment is deemed non-severe because it, when considered alongside a claimant's other impairments, "may prevent an individual from performing past relevant work." SSR 96-8p at *5.

Consideration of physical and mental impairments during the RFC analysis is distinct from the determination of an impairment's severity at step two. *See Wells v. Colvin*, 727 F.3d 1061, 1068–69 (10th Cir. 2013). An analysis of a mental impairment according to the "paragraph B" factors at step two is not the same as an RFC analysis. *Id.* at 1069; SSR 96-8p, 1996 WL 374184, at *4. "The mental RFC assessment used at steps 4 and 5 . . . requires a more detailed assessment . . . ." *Wells*, 727 F.3d at 1069 (citation omitted). And that assessment is essential to later steps in the overall disability analysis.

Failure to assess a claimant's mental RFC after recognizing non-severe medically determinable mental impairments at step two is reversible error. *McFerran v. Astrue*, 437 F. App'x 634, 638 (10th Cir. 2011) (reversing decision in part where the ALJ failed to consider non-severe mental impairments when determining claimant's RFC); *Grotendorst v. Astrue*, 370 F. App'x 879, 884 (10th Cir. 2010) (same); *Mushero v. Astrue*, 384 F. App'x 693, 695 (10th Cir. 2010) (same); *see also Wells*, 727 F.3d at 1065 (reversing where the ALJ suggested that he had excluded the plaintiff's non-severe medically determinable mental impairments as part of the RFC assessment based on the fact that those impairments were non-severe); *Stephanie G. v. Kijakazi*, No. 20-2623,

2022 WL 266801, at *6 (D. Kan. Jan. 28, 2022). The situation in *Stephanie G.* is illustrative. There, "[t]he ALJ concluded [at step two] that Plaintiff had mild limitation in understanding, remembering, or applying information; mild limitation in interacting with others; mild limitation in concentrating, persisting, or maintaining pace; and mild limitation in adapting or managing herself." 2022 WL 266801 at *4. The ALJ recognized that the assessment of mental impairment under the "paragraph B" criteria was not identical to a mental RFC assessment but that the RFC assessment "reflect[ed] the degree of limitation . . . found in the 'paragraph B' mental function analysis." *Id.* at *5. Despite that finding, the ALJ subsequently failed to discuss the plaintiff's medically determinable mental impairments during the RFC assessment. The district court reversed and remanded because the ALJ did not discuss the non-severe mental impairments established at step two in the RFC assessment and thus "did not complete the procedure prescribed by the regulations for step four." *Id.* at *6. Rather, the ALJ relied on the step two finding during the RFC assessment, which the Tenth Circuit has held to be "inadequate" because "step four requires a more detailed analysis." *Id.* at *5 (citing *Wells*, 727 F.3d at 1068). The district court instructed the ALJ on remand to "make an RFC assessment that includes a narrative discussion regarding whether Plaintiff's mental impairments, combined with her physical impairments, warrant any limitations in the RFC." *Id.*

Plaintiff's situation is nearly identical to the plaintiff's in *Stephanie G.*, and the same outcome is appropriate. At step two, the ALJ found that Plaintiff had non-severe medically determinable mental impairments, resulting in the same "mild limitation[s]" as the plaintiff in *Stephanie G.* Adm. Rec. at 14. The ALJ then stated that the "paragraph B" criteria are not equivalent to an RFC assessment and that the RFC assessment must be more detailed. *Id.* The ALJ further stated that "[t]he following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis." *Id.* At the conclusion of step two, the ALJ said that all of Plaintiff's impairments were considered when assessing her RFC. *Id.* But when conducting the RFC assessment, the ALJ made no mention of Plaintiff's non-severe medically determinable mental impairments, instead discussing only her physical impairments. *Id.* at 15–17.

This was error for two reasons. First, the ALJ failed to follow the procedures set forth in the regulations, which state that all medically determinable impairments, severe and non-severe alike, must be

accounted for in the RFC assessment. SSR 96-8p, 1996 WL 374184, at
*4; *see also McFerran*, 437 F. App'x at 638; *Grotendorst*, 370 F. App'x at
884; *Mushero*, 384 F. App'x at 695. Second, to the extent the ALJ im-
plicitly considered Plaintiff's mental impairments, it appears that the
ALJ relied on the step-two findings concerning Plaintiff's mental im-
pairments rather than conducting a more rigorous assessment of those
impairments as required. *See Wells*, 727 F.3d at 1068.

The Commissioner argues that the ALJ was "not required to in-
clude limitations in the RFC that are not supported by the record."
Doc. 18 at 5 (citing *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir.
2000)). But the ALJ's own findings belie the Commissioner's conclu-
sion. The ALJ found that Plaintiff had medically determinable mental
impairments and that medical evidence supported a finding of mild
limitations under the paragraph B criteria. That the evidence may have
shown that Plaintiff's mental impairments were not serious is irrelevant
to whether the ALJ needed to consider those impairments in conjunc-
tion with the physical impairments during the RFC assessment. SSR
96-8p, 1996 WL 374184, at *4 ("While a 'not severe' impairment(s)
standing alone may not significantly limit an individual's ability to do
basic work activities, it may--when considered with limitations or re-
strictions due to other impairments--be critical to the outcome of a
claim.").

Relying on *Beasley v. Colvin*, 520 F. App'x 748, 754 & n.3 (10th Cir.
2013), the Commissioner argues that the ALJ was under no obligation
to address Plaintiff's mild limitations simply because the ALJ found
those limitations under the paragraph B criteria. Doc. 18 at 6. But
*Beasley* is inapposite. There, the ALJ found under the paragraph B cri-
teria that the plaintiff had "'moderate difficulties' in social function-
ing." *Beasley*, 520 F. App'x at 754. The ALJ then addressed those diffi-
culties during the RFC assessment, concluding "that, in spite of any
limitations in social functioning, [the plaintiff] could 'respond appro-
priately to supervision, co-workers, the general public, and usual work
situations.'" *Id.* Consideration of the impairment during the RFC anal-
ysis is the critical missing element in this case: the ALJ did not address
or consider Plaintiff's mental impairments during the RFC assessment
at all. The ALJ was not required to include the mild limitations deter-
mined from the paragraph B criteria in Plaintiff's RFC, but the ALJ
still needed to address the underlying non-severe medically determina-
ble mental impairments in the RFC assessment in combination with

7

the physical impairment. *See Stephanie G.*, 2022 WL 266801, at *5 (addressing *Beasley* in this context).

### III

For the foregoing reasons, the Commissioner's final decision is REVERSED and the case is REMANDED for further proceedings consistent with the reasoning above.

It is so ordered.

Date: June 21, 2023                         s/ Toby Crouse
                                      Toby Crouse
                                      United States District Judge